We hear next from the parties in You v. Sessions. Good morning, Honors. May it please the Court, Joshua Bardavid for Petitioner Miss You. The immigration judge, in a frankly extremely short decision, denied Miss You's application for lack of corroboration. At the outset, it's important to understand that the immigration judge found Miss You credible. Her testimony that she was detained on two different occasions for one week for practicing her religion, that she was beaten on both occasions, that she was left bruised on both occasions, that testimony was found credible. She also testified that since coming to the United States, she has attended church on a regular basis and fears going back to China on account of her continued practice in her religion. That testimony was found credible. The immigration judge based his negative credibility determination with respect to past persecution primarily on the assertion that she presented, quote, no evidence to corroborate her injuries. This finding completely belies the record. Miss You did present specific evidence to corroborate her injuries, and that is in the form of her father's letter. It's our position that the immigration judge did not consider her father's letter. The government argues that we gave no indication that the judge didn't consider the letter, and it should be presumed that the judge considered the record as a whole in reaching his determination. To the contrary, there is sufficient indication that the judge didn't consider this very important letter, which corroborates her injuries. That is both the explicit language of the judge's decision and the language omitted from the judge's decision. The language omitted from the judge's decision is a mention of the letter. There was none. But the explicit language, again, I go back to page 54 of the record, was, quote, no evidence to corroborate her injuries. That shows that the judge, in fact, did not consider this highly corroborative letter from her father. And so when he says no evidence, it's not that he said, well, I don't really believe the father. It's not that he said, you know, there's a contradiction in the father's letter. He just says no evidence. And so that is the indication that the judge did not consider the evidence of her past persecution, of her harm. And accordingly, at the very least, remand would be appropriate to see whether the agency would reach the same conclusion had this letter been considered. And this is not the only evidence, corroborative evidence, that was presented by Ms. Yu of what occurred in China. The judge gave no weight whatsoever to the corroborating letter from the individual who introduced Ms. Yu to her practice of Christianity. But there's no issue about consideration. I mean, the judge referenced it. He does reference Ms. Wu, the woman who introduced Ms. Yu to China. He does say that he's not going to consider it because what he deems is some sort of inconsistency about the dates that Ms. Wu and Ms. Yu met. That ---- Sotomayor, you've got a more difficult burden in arguing to us that we would second-guess the judge on that one, right? I concede that is certainly a more difficult argument. But when taken in conjunction with a failure to consider the father's letter, that, I think, is sufficient for the ---- for, at the very least, for remand, for further consideration. Now, the judge faults Ms. Yu for failing to present any arrest records or medical records or other evidence of the harm that she suffered, but he doesn't explain why it would be reasonable, as required by this court in Diallo, why it would be reasonable to expect such records where Ms. Yu specifically said that she was never charged with a crime. It was not a formal arrest. This was basically the police coming to an underground church and raiding it, detaining them. It's unfortunately, as the background evidence documents in the record, Chinese procedures do not comport with what normally would occur where the police arrest a person in the United States, where there would be documentation. She never saw a judge. She was never provided a lawyer. This was basically the local police cracking down. They took her in. They held her. They beat her, and they released her. She never said that there was any documentation. She admitted that she never went to receive medical treatment, but again, her father talks about how when both times when he picked her up after from the police station that she had bruises all over her body and that she was extremely depressed for the weeks following. So under these circumstances, it's not been explained by the judge why it was reasonable under Diallo to expect further corroboration. If the judge identified the specific documents that exist, that would be one thing. But he never says these documents exist. He just says, I want these documents, but he has to first identify whether those documents exist, and there's no indication whatsoever that they do exist and even should under the procedures documented in China that they would exist. I would also note that the immigration judge's finding with respect to past persecution is in a single paragraph, a single sentence actually, where he says that two detentions for a week each time and beatings do not rise to the level of past persecution. But again, that does not consider the record as a whole where she also testified that her church was closed down and she was denied the ability to practice her religion. Finally, I would like to turn to the issue of whether these claims were sufficiently exhausted by prior counsel to the board. The government relies heavily on the assertion that the issue of the father's letter was not exhausted to the board, and that's actually not true. What the law requires is that the issues and claims be exhausted. The prior counsel in his brief specifically argued, quote, that Ms. Yu submitted substantial evidence to establish that she suffered past persecution and that she has a well-founded fear of future persecution. And he further argues, quote, the I.J. erroneously did not consider all of the evidence.  The fact that undoubtedly the brief doesn't go into detail about the father's letter, that is true, but that is not what is required by this Court in Gill for issue exhaustion. The issue of the failure to consider the record as a whole, consider the evidence as a whole, and to sufficiently document her claim and corroborate her claim was raised. The board was appraised of it. The board addressed it. And therefore, it was sufficiently exhausted. Unless the Court has further questions, I'll remain the remaining time or reserve the remaining time for rebuttal. Thank you. Kagan. Good morning. May it please the Court. Vanessa Otero for the government. Your Honors, the Petitioner will have you believe that this case is about errors that the agency committed and documents that it failed to consider, but she's mistaken. What it's really about is her failure to adequately corroborate her claim with evidence that was reasonably available and her failure to explain why such evidence was unavailable. Now, the corroboration standard that applies here and is found in the INA provides that the agency can require an applicant, even if she's found credible, which she was here, to provide corroborative evidence unless she doesn't have it and cannot obtain it. Now, importantly, to review this corroboration standard and for this Court to overturn the agency's decision finding that she didn't sufficiently corroborate her claim, this Court would have to find that a reasonable fact finder would be compelled to conclude that such evidence is unavailable. Here, the agency identified, both the Board and the immigration judge, the type of evidence that it wanted from her, that it just needed more evidence. She was found credible, yes, but the immigration judge went into quite some detail, sort of dismissing the rest of her corroborative evidence for different reasons and found that while her testimony was credible, he needed more from her to believe that the strength of her practice of Christianity, so much so that she would go back to China and be persecuted on account of that belief. How do you respond to counsel's argument that the failure to mention the father's claim as credited could be deemed corroborative warrants at least remand to ensure that it was considered and not inadvertently overlooked? Well, Your Honor, under this Court's precedent in Chen, which is the 2006 decision, the agency is presumed to have reviewed all of the record evidence. Right. The presumption isn't set in stone. One of the curious things here is that we appear to have an I.J. who diligently addressed every piece of evidence. Right. I agree. Except this one. Right. And that's what appears to raise a concern is that this isn't an I.J. who just lumped it all together or anything like that. He spoke about every piece of evidence and talked about why he gave it weight or why he didn't give it weight. In that context, why shouldn't we have a concern that this may have been either overlooked or somehow we can't review it because we don't know what he thought about it? Well, Your Honor, the I.J. at page 50 and then again at 75 and 76 of the record referenced the evidence packet that contained the father's letter. No, I understand that, but never the letter. Just do you have any other basis for urging us not to remand other than that we apply the presumption and there's no reason to depart from it here? Well, remand would be futile here because I think that the agency would come to the same conclusion that it already did. Counsel spent a lot of time arguing, challenging the past persecution finding, which isn't a finding that the Board even addressed. In fact, the Board specifically said we're not going to address that past persecution finding, the rising to the level of past persecution. He also made a heavy point that the I.J. was very specific that she didn't find any corroborative evidence of her injuries. What she testified to was that she never went to the doctor after she was arrested. And I think the second time, I don't think she even really testified to having any injuries. Now, if you even look at the father's letter, what he said specifically after her first arrest was that she looked exhausted and had bruises on her body. After her second arrest, I think he said that she looked tired. So I'm not sure that it's even very supportive of evidence of her quote-unquote injuries, which is what counsel seems to be so concerned about, that the I.J. made some sort of mistake by saying that she didn't provide any evidence of her injuries. I don't know how relevant that is in general, also given the fact that on review, the Board didn't adopt the past persecution finding, the rising to the level of past persecution. Therefore, what the Board was really looking at, and that's the decision that's before this Court here, is that she generally failed to corroborate her claim in total, not specifically about her injuries. If the past persecution finding isn't before this Court, that whatever her claim was didn't rise to the level of past persecution, it's not so relevant that there was evidence or wasn't evidence of her injuries, if that makes any sense. Now, I'd like to point out, though, as Your Honor also mentioned, the immigration judge required this additional corroborative evidence, and so did the Board, of her arrests and detention, et cetera, and she could have provided that evidence. She actually did admit, at page 108 of the record, that there was evidence, not necessarily of her arrest, but of the affidavit of promise. She said that's the affidavit of promises with the Public Security Bureau in China. That's the promise letter she signed saying she's never going to practice religion again. She never made an effort to get that. She never made an effort to get eyewitness testimony or affidavits from nine of the other people who were arrested with her the first time and maybe five of the other people that were arrested from her the second time. And I think what's important to remember here is all along she argued to the Board that it would be unreasonable for the judge, it was unreasonable for the judge to ask her to submit such evidence, and yet that's not the standard. The standard is whether or not this evidence is or isn't available. Unreasonable or not makes no difference here. And, in fact, she submitted other evidence from the Chinese government, a notarized birth certificate, a notarized adoption certificate. Those two certificates come from the Chinese government, and they were dated July 2012, which is after she came to the United States. They're not exactly the same thing as asking the Chinese government for documentary evidence corroborating the claim of religious persecution and brutality, right? No, I agree with you. I'm not suggesting that it is. What I'm saying is that she has submitted other evidence from the Chinese government, and as the Board pointed out in its decision, it addressed that specific argument that she made to the Board that it would be unreasonable for her to get evidence from her persecutors. And it said, well, you don't have to do that. You can get eyewitness reports from other people that were arrested with her. And she didn't do that. She didn't submit any affidavits from any of the other people that she knew. On what basis is there for an assumption either that she knew the others arrested, I suppose maybe, or that the others wouldn't decline to provide the evidence for fear of further prosecution if they show up in an American proceeding as witnesses against the Chinese government? I mean, we're dealing with a state that doesn't play by rules the same as the United States. Your Honor, I understand where you're going with that. I don't think an affidavit from an eyewitness is so much to ask for. As it stands, she got a letter from her friend Wu, who was also a member of that church. That person wasn't arrested with her on either account. You think it's easy to get an affidavit from an inmate in a federal prison corroborating the claim of another inmate that a guard beat up the other inmate?  You think that's easy? I'm not saying that it is. What I'm saying, though, is that that's a completely different situation than what's here. She was arrested with nine other people in China, and they were all released. And as counsel pointed out, there were never any charges brought against her, so I think it would be a little bit different. And like I said, she did submit a letter from her friend, who is the person who used to go to church with her in China. It would be the same thing. Thank you. Thank you, Your Honor. All right, David, can you serve us? Thank you, Your Honor. The Attorney General argues, my colleague argues, that whether it was reasonable or unreasonable to expect the corroboration is not the standard. It is the standard. That's explicitly the standard. Quoting from Diallo, and I.J. must, quote, explain specifically, either in its decision or otherwise in the record, why it is reasonable to expect such corroboration. That is from Diallo, V.I.N.S. 232 F. 3rd 279 at 280. That's a 2000 decision of this Court that has been repeatedly affirmed. So that is the standard. And our argument is that the judge never made that explanation. Your Honor was asking questions about whether or not it's reasonable to expect this type of evidence, whether we're going to essentially ask Ms. Yu to get this promise that she signed to the police, whether it's reasonable to ask, to have her ask the persecutor for proof that it persecutes, is essentially what the judge was expecting. And regardless, it's not for this Court to guess whether it's reasonable. It was for the immigration judge to explain why it was reasonable. And that explanation wasn't done. So we don't need to debate whether it was reasonable or unreasonable. What matters is that it wasn't done below, and so that's why a remand is required. The second thing is, is that it was argued that we don't know whether it would really make a difference if the judge considered the fatherless letter. Again, that is correct. I don't know whether it would make a difference. Certainly this Court can't guess, but the rule says is that this Court shouldn't guess. It's for the agency to make the determination in the first instance. And so what we're asking for is a relatively limited relief, which is remand to the – back to the agency to show that it first considered all the evidence so we can be sure that it did, and two, to provide an explanation if it is still going to deny why the agency believes it's reasonable to expect this corroboration. And because the agency hasn't provided that explanation, that is why we are requesting the remand. Unless the Court has any further questions, we'll rest on our briefs. Thank you. Thank you, Your Honor. We're going to take this case under advisement and try to get you in decision as soon as we can.